DAVID M. ROSENBERG-WOHL (Cal. Bar No. 132924)
HERSHENSON ROSENBERG-WOHL,
A PROFESSIONAL CORPORATION
315 Montgomery St., 8th Fl.
San Francisco, CA 94104
(415) 829-4330
david@hrw-law.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNIE TABAS, ROBERT BARKER, TRISTAN YOUNG, CYNTHIA RUTTER, AND KASRA ELIASIEH, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | Case No.: 3:18-cv-07129 |
| Plaintiffs, | **AMENDED COMPLAINT [CLASS ACTION]** |
| vs. | |
| CHASE BANK USA, N.A., BANK OF AMERICA CORPORATION, AND DOES 1-10, | |
| Defendants. | |

Plaintiffs Connie Tabas, Robert Barker, Tristan Young, Cynthia Rutter, and Kasra Eliasieh ("Plaintiffs"), by and through the undersigned counsel, bring this Complaint on behalf of themselves and all other consumers similarly situated throughout the United States (as described in the Class Action Allegations below) against Defendant Chase Bank USA, N.A. and Does 1-10 ("Defendants") for damages, restitution, declaratory and injunctive relief. Plaintiff Kasra Eliasieh also brings this Complaint on behalf of himself and all other consumers similarly

situated throughout the United States (as described in the Class Action Allegations below) against Defendant Bank of America. Plaintiffs in support thereof state as follows:

## JURISDITION AND VENUE

1.    This Court has federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)-(c) because the citizenship of the parties is completely diverse and the amount in controversy exceeds $75,000 and § 1332(d) because the matter in controversy exceeds the sum or value of $5,000,000 and is a class action in which at least one member of the class is a citizen of a state different from that of any defendant.

2.    Plaintiffs Connie Tabas, Robert Barker, and Kasra Eliasieh are citizens of California. Plaintiff Tristan Young is a citizen of Georgia. Plaintiff Cynthia Rutter is a citizen of Wyoming.

3.    Defendant Chase Bank USA, N.A. ("Chase") is a Delaware corporation. Chase conducts its banking operations, including the operations involving its credit cards, through its headquarters in New York. Under its agreements, Delaware law and New York law apply nationally.

4.    Defendant Bank of America Corporation ("BOA") is a Delaware corporation. BOA conducts its banking operations, including the operations involving its credit cards, through its headquarters in North Carolina. Under its agreements, North Carolina law applies nationally.

5.    Defendants are subject to personal jurisdiction throughout California pursuant to 28 U.S.C. §§ 1332(a)-(c); 1391(b)(2) and (3) because they enter into credit card agreements with consumers such as Plaintiffs Tabas, Barker and Eliasieh who live there.

6.  Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because Defendants seek to do and do business in this District, Defendants have transacted business with Plaintiffs Tabas, Barker and Eliasieh in this District, and Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

7.  All Plaintiffs entered into credit card agreements ("cardmember agreements") with Chase. Plaintiff Eliasieh also entered into a cardmember agreement with BOA.

8.  Under their respective cardmember agreements, Plaintiffs pay an annual fee to have a credit card to establish short-term lines of credit with merchants, under which Defendants agree to pay merchants promptly and Plaintiffs agree to pay Defendants over time with interest. This is the sum total of the financial value of the transaction disclosed by Defendants to Plaintiffs. But it is not the whole story.

9.  **Credit card application**.

10. In order to obtain their respective cardmember agreements, Plaintiffs needed to provide a significant and variegated array of personal financial information (PFI) to Defendants. This PFI was comprised, among other things, of SSN, full name, date of birth, residential address, email address, type of residence, driver's license or other identifying documents, employment status, gross annual income, and non-taxable gross annual income.

11. Chase.

12. Simply by responding to the credit card offer, Plaintiffs were held to have authorized Chase to obtain credit bureau reports along with "any other information about you" from third parties.

13. Pursuant to "Pricing & Terms. Terms & Conditions": "When you respond to this credit card offer…you agree to the following" – credit bureau reports that we will use when considering your application for credit, credit bureau reports and "any other information about you" in connection with extensions of credit on your account, administration, review or collection of your account, offering enhanced or additional products and services."

14. Even without having accepted Plaintiffs' application for a credit card, Chase begins "sharing" the PFI provided by Plaintiffs. "Affiliate Information Sharing: We and our affiliates may share information about you among affiliates in order to offer products and services of interest to you." "Affiliates" are defined as follows: "Companies related by common ownership or control. They can be financial and nonfinancial companies." "Our affiliates include companies with a Chase or J.P. Morgan name and financial companies such as J.P. Morgan Securities LLC."

15. Upon providing a credit card to Plaintiffs, Chase explains that it will continue to collect PFI including income, account balances, transaction history, credit history payment history in a variety of ways: "We collect your personal information, for example, when you *open an account or make deposits or withdrawals from your account, *pay your bills or apply for a loan, *use your credit or debit card. We also collect your personal information from others, such as credit bureaus, affiliates, or other companies." Chase makes clear that this grab of information is expansive: it can include any "personal and financial information about you".

16. <u>Sharing and the consumer's right to limit sharing</u>.

17. Chase then provides an expansive opt-out. In its credit card application, Chase states: "If you would prefer that we do not share information from your application, credit bureaus or third parties, please call us at 1-888-868-8618."

18. Deeper into the referenced documents, however, the nature of the opt-out becomes murky: it may be that Plaintiffs cannot in fact limit sharing, as promised. "Federal law gives consumers the right to limit some but not all sharing."

19. Chase provides seven reasons it can, under the law, "share your personal information" – described by the nature of the PFI and the nature of the recipient: (1) "For our everyday business purposes – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus," (2) "For our marketing purposes -- to offer our products and services to you," (3) For joint marketing with other financial companies," (4) "For our affiliates' everyday business purposes – information about your transactions and experiences," (5) "For our affiliates' everyday business purposes – information about your creditworthiness," (6) "For our affiliates to market to you," and (7) "For nonaffiliates to market to you."

20. For each of the seven, Chase states that it does, in fact, "share".

21. Chase then states that a consumer can limit this sharing for nos. 5-7 only.

22. Leaving aside what Chase itself can do with a consumer's PFI, there are three categories of entities with which Chase shares data: other financial companies, for joint marketing; affiliates, for everyday business purposes, information about transactions and experiences (which cannot be limited) and creditworthiness (which can be); and for marketing (which can be limited too); and nonaffiliates, for marketing (which can be limited).

23. Affiliates: "Companies related by common ownership or control. They can be financial and nonfinancial companies." "Our affiliates include companies with a Chase of J.P. Morgan name and financial companies such as J.P. Morgan Securities LLC."

24. Nonaffiliates. "Companies not related by common ownership or control. They can be financial and nonfinancial companies." "Nonaffiliates we share with can include companies such as retailers, auto dealers, auto makers and membership clubs."

25. Joint marketing. "A formal agreement between nonaffiliated financial companies that together market financial products or services to you." "Our joint marketing partners include categories of companies such as insurance companies."

26. Of these, Chase disclosed only the limitable sharing with affiliates for marketing in the application itself.

27. Chase makes clear that its sharing of Plaintiffs' information continues even when the consumer no longer uses his or her credit card. "When you are *no longer* our customer, we continue to share your information as described in this notice."

28. Under California law, the disclosure is similarly murky. "You have the right to control whether we share some of your personal information."

29. "You have the following rights to restrict the sharing of personal and financial information with our affiliates (companies we own or control) and outside companies that we do business with. Nothing in this form prohibits the sharing of information necessary for us to follow the law, as permitted by law, or to give you the best service on your accounts with us. This includes sending you information about some other products or services."

30.	"Unless you say 'No,' we may share personal and financial information about you with our affiliated companies."

31.	"Unless you say 'No,' we may share personal and financial information about you with outside companies we contract with to provide financial products and services."

32.	"[I]f we do not hear from you we may share some of your information with affiliated companies and other companies with whom we have contracts to provide products and services."

33.	In text responsive to the hypothetical question, "Why can't I limit all sharing?, Chase says "Federal law gives you the right to limit only *sharing for affiliates' everyday business purposes – information about your creditworthiness; *affiliates from using your information to market to you; *sharing for no affiliates to market to you. State laws and individual companies may give you additional rights to limit sharing."

34.	<u>BOA</u>

35.	In its credit card application, BOA provides similar language: "You authorize us to collect information about you in order to conduct our business and deliver the top quality service you expect, including information we receive about you, information we receive from third parties such as credit reporting agencies and information about your transactions with us and other companies. You authorize us to share such information about you or your account with our affiliates and others. You may have the right to opt out of some information sharing. For more details, please refer to our Privacy Notice."

36.	In the U.S. Consumer Privacy Notice referenced:

37.	"Federal law gives consumers the right to limit some but not all sharing."

38. "Federal law also requires us to tell you how we collect, share, and protect your personal information."

39. BOA provides seven reasons it can, under the law, "share your personal information:" (1) "For our everyday business purposes – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus," (2) "For our marketing purposes --  to offer our products and services to you," (3) For joint marketing with other financial companies," (4) "For our affiliates' everyday business purposes – information about your transactions and experiences," (5) "For our affiliates' everyday business purposes – information about your creditworthiness," (6) "For our affiliates to market to you," – for all credit card accounts, and (7) "For nonaffiliates to market to you – for accounts and services endorsed by another organization (e.g., debit card co-branded with a baseball team) 'Sponsored Accounts'." (There is an eighth: "For nonaffiliates to market to you – for accounts other than credit card accounts and Sponsored Accounts, such as insurance, investments, deposit and lending." BOA doesn't share.)

40. For each of the seven, BOA states that it does in fact share.

41. For nos. 5-7 only, BOA states that a consumer can limit this sharing.

42. Leaving aside what BOA itself can do with a consumer's PFI, there are three categories of entities with which BOA shares data: other financial companies, for joint marketing; affiliates, for everyday business purposes, information about transactions and experiences (which cannot be limited) and creditworthiness (which can be); and for marketing (which can be limited too); and nonaffiliates, for marketing (which can be limited).

43. Definitions. Affiliates: "Companies related by common ownership or control. They can be financial and nonfinancial companies." "Our affiliates include companies that utilize names Bank of America, Banc of America, U.S. Trust or Merrill Lynch, as well as financial companies such as General Fidelity Life Insurance Company."

44. Nonaffiliates. "Companies not related by common ownership or control. They can be financial and nonfinancial companies." "Nonaffiliates we share with can include financial services companies such as insurance agencies or mortgage brokers, nonfinancial companies such as retailers, travel companies and membership groups, other companies such as nonprofit groups."

45. Joint marketing. "A formal agreement between nonaffiliated financial companies that together market financial products or services to you." "Our joint marketing partners include financial services companies."

46. Of these, only the limitable sharing with affiliates for marketing was disclosed in the application itself.

47. BOA makes clear: "When you are *no longer* our customer, we continue to share your information as described in this notice."

48. Under California law, the disclosure is similarly confusing: "we will not share information we collect about you with companies outside of Bank of America, unless the law allows. For example, we may share information with your consent, to service your accounts, or to provide rewards or benefits you are entitled to. We will limit sharing among our companies to the extent required by California law."

49. In response to the hypothetical question, "Why can't I limit all sharing?", BOA responds: "Federal law gives you the right to limit some but not all sharing related to: *affiliates'

everyday business purposes—information about your creditworthiness, *affiliates from using your information to market to you, *nonaffiliates to market to you. State laws and individual Bank of America companies may give you more right to limit sharing. See Other important information section for your rights under state law."

50. The financial value of Plaintiffs' PFI

51. Plaintiffs' PFI is valuable to Defendants: they regularly enter into agreements with third parties by which they provide this PFI, in whole or in part, in exchange for money and other financial benefit. Whether an affiliate or non-affiliate, the fact that Defendants "share" with distinct corporate entities means that there must be market value for the exchange of PFI "shared". In the case of certain agreements for sharing, the financial exchange is readily apparent: data is "shared" with third parties that seek to market to those whose PFI has been obtained by Defendants and provided to others. Under these agreements, Defendants have profited greatly from the sale of Plaintiffs' PFI to these third parties.

52. Plaintiffs have a property interest in their own PFI. This property interest is not simply in unique identifiers such as SSNs but in combinations of data that readily serve or can serve to identify individuals. This property interest is broader than an identifier or collection of identifiers belonging to a person that comprise that individual's identity but includes that person's habits as a consumer, whether related to banking, borrowing, investing, spending – on what, when and where.

53. Plaintiffs have a property interest in their own PFI regardless of what Defendants may do to or with it once Defendants have it in their possession, however it may be de-identified and/or aggregated for sale.

54. Plaintiffs have not agreed that Defendants may profit from their PFI.

55. Defendants have not disclosed to Plaintiffs that they profit from Plaintiffs' PFI, whether through use of the term "sale," "lease," or otherwise. They hide behind the term "share" to conceal the great profit they make off of their customers PFI unbeknownst to them.

56. Defendants have not shared any of the profit from Plaintiffs' PFI with Plaintiffs themselves.

## CLASS ACTION ALLEGATIONS

57. **Class definition:** All U.S. consumers who have entered into cardmember agreements with Defendants.

58. **Subclass definition:** All California consumers who have entered into cardmember agreements with Defendants.

59. **Subclass definition:** All Georgia consumers who continue to have cardmember agreements with Defendants.

60. **Subclass definition:** All Wyoming consumers who continue to have cardmember agreements with Defendants.

61. Numerosity. There are so many potential class members that individual joinder of class members is impractical. Consumer credit cards are ubiquitous, and Chase and BOA are among the top providers of these credit cards.

62. Commonality. There are questions of law or fact common to class members. Each and every one of the credit card agreements made by Chase and BOA provides the language or substantially similar language quoted above, providing the same evidence that consumers' PFI is sold, leased or otherwise profited from by Chase and BOA regardless of the branding of the credit card issued.

63. Typicality. Claims of representative are typical of those of absent class members. Each plaintiff is a Chase credit card holder and therefore holds or has held a cardmember agreement with identical or substantially similar language. Eliasieh holds or has held a BOA credit card which has standard language, quoted above, that applies to all lines of credit cards issued by BOA.

64. To the extent subclasses are warranted, Tabas, Barker and Eliasieh are California residents and are therefore typical of California consumers. The fact that there is a California privacy notice suggests both that the language of the cardmember agreement is standard across the states and that the language of the California privacy notice is specific to California. California consumer law, identified below, has a particular interest in California consumers. Georgia consumer law, identified below, has a particular interest in Georgia consumers; Young is a Georgia resident and therefore typical of Georgia cardholders. Wyoming consumer law, identified below, has a particular interest in Wyoming consumers; Rutter is a Wyoming resident and therefore typical of Wyoming cardholders. To the extent Delaware law, New York law or North Carolina law applies, each Plaintiff is typical of any consumer nationwide.

65. Adequacy of representation. Class counsel and Plaintiffs intend to fairly and adequately protect the interests of absent class members. Class counsel has litigated numerous class action cases and issues, and Plaintiffs have all agreed to represent the class and not just their own interests herein.

**(FIRST CLAIM FOR RELIEF)**

**(common law conversion)**

66. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-65 of this Complaint as if fully set forth herein.

67. Defendants have taken property provided to them by Plaintiffs for one purpose, property with financial value, and, without notice or consent have put that property to different use, for Defendants' financial gain, and without sharing any of the gain with Plaintiffs.

68. This behavior constitutes conversion under the common law, and specifically under the laws of the states of Delaware, New York and North Carolina – claimed to be applicable to these credit card agreements nationally – and under the laws of California, Georgia and Wyoming – the home states of the named Plaintiffs.

69. Plaintiffs have been injured accordingly, with relief to be calculated as allowed by each applicable state law.

### (SECOND CLAIM FOR RELIEF)

### (common law *quantum meruit/valebat*)

70. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-69 of this Complaint as if fully set forth herein.

71. Defendants have benefited financially from the property of Plaintiffs in a way not intended by Plaintiffs, shared with Plaintiffs, or fair.

72. This behavior establishes a contract implied in law, under which there is an equitable claim for *quantum meruit* and/or *quantum valebat*, specifically under the laws of the states of Delaware, New York and North Carolina – claimed to be applicable to these credit card agreements nationally – and under the laws of California, Georgia and Wyoming – the home states of the named Plaintiffs.

73. Plaintiffs have been injured accordingly, with relief to be calculated as allowed by each applicable state law.

**(THIRD CLAIM FOR RELIEF)**

**(right of privacy/right of publicity)**

74. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-73 of this Complaint as if fully set forth herein.

75. Defendants have by their conduct sold or otherwise financially transferred aspects of Plaintiffs' identities, in whole or in part, to third parties in ways that permit third parties to identify Plaintiffs and market to them.

76. Plaintiffs were not advised that their PFI, or parts thereof, had financial value and that it would be sold, leased or otherwise financially transferred to third parties. The language of "sharing," even if Plaintiffs could have found it and understood it, suggests a relationship between Defendants and third parties that is close enough not to compromise personal privacy, while the truth of the underlying financial transaction exposes the clearly commercial and therefore "unprivileged" nature of the relationship.

77. Taking one's personal identity, in whole or in part, and profiting from it commercially, violates the common law, including specifically California law, including Civil Code section 3344.

78. Plaintiffs have been injured accordingly, with relief to be calculated as allowed by each applicable state law.

**(FOURTH CLAIM FOR RELIEF)**

**(right of privacy/right of seclusion)**

79. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-78 of this Complaint as if fully set forth herein.

80. Defendants have by their undisclosed and unpermitted sale of Plaintiffs' identities to third parties, in whole or in part, to permit third parties to identify Plaintiffs and market to them, constitutes intrusion into a private matter in which Plaintiffs had a reasonable expectation of privacy. This expectation was reasonable in part because Defendants both concealed that they would "share" the information and concealed, by use of the word "share" that it had financial value that would be sold or financially transferred at arm's length to a third party. The language of "sharing," even if Plaintiffs could have found it and understood it, suggests a relationship between Defendants and third parties that is close enough not to compromise personal privacy, while the truth of the underlying financial transaction exposes the clearly commercial and therefore "unprivileged" nature of the relationship.

81. Intruding into such data in which Plaintiffs had a reasonable expectation of privacy constitutes violation of privacy rights/intrusion upon seclusion, in violation of the common law.

82. Plaintiffs have been injured accordingly, with relief to be calculated as allowed by each applicable state law.

### (FIFTH CLAIM FOR RELIEF)

### (implied in fact contract)

83. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-82 of this Complaint as if fully set forth herein.

84. Defendants have by their use of the word "share," concealed that Plaintiffs' PFI had financial value that Defendants would sell or financially transfer at arm's length to a third party. The language of "sharing" suggests a relationship between Defendants and third parties that is close enough not to compromise personal privacy, while the truth of the underlying financial transaction exposes the clearly commercial and therefore "unprivileged" nature of the relationship.

85. Defendants' sale or financial transfer of Plaintiffs' PFI breached the promise implied in Defendants' representations they would only "share" this PFI, in violation of the common law.

86. Plaintiffs have been injured accordingly, with relief to be calculated as allowed by each applicable state law.

## (SIXTH CLAIM FOR RELIEF)

## (California CLRA: unfair or deceptive acts or practices)

87. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-86 of this Complaint as if fully set forth herein.

88. Defendants have by their conduct engaged in unfair or deceptive acts or practices, especially in concealing and otherwise failing to disclose that they sell or otherwise financially transfer to third parties Plaintiffs' PFI, in whole or in part, something any reasonable Plaintiffs would want to know about and either refuse or be compensated for.

89. This conduct violates California Civil Code section 1750 et seq.

90. Plaintiffs have been injured accordingly, with relief to be calculated as allowed by this statute.

## (SEVENTH CLAIM FOR RELIEF)

**(California UCL: unlawful, unfair, fraudulent)**

91. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-90 of this Complaint as if fully set forth herein.

92. Defendants have by their conduct engaged in unfair competition, in that the conduct violates the law (common and statutory), is unfair, and is fraudulent under Cal. Bus. & Prof. Code § 17200.

93. Plaintiffs have been injured accordingly, with relief to be calculated as allowed by this statute.

**(EIGHTH CLAIM FOR RELIEF)**

**(Georgia FBPA: deceptive or unfair practices)**

94. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-93 of this Complaint as if fully set forth herein.

95. Defendants have by their conduct engaged in deceptive or unfair practices, especially in concealing and otherwise failing to disclose that they sell or otherwise financially transfer to third parties Plaintiffs' PFI, in whole or in part, something any reasonable Plaintiffs would want to know about and either refuse or be compensated for.

96. This conduct violates O.C.G.A. section 10-1-390 et seq.

97. Plaintiffs have been injured accordingly, with relief to be calculated as allowed by this statute.

**(NINTH CLAIM FOR RELIEF)**

**(Wyoming Consumer Protection Act)**

98. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-97 of this Complaint as if fully set forth herein.

99. Defendants have by their conduct engaged in deceptive or unfair practices, especially in concealing and otherwise failing to disclose that they sell or otherwise financially transfer to third parties Plaintiffs' PFI, in whole or in part, something any reasonable Plaintiffs would want to know about and either refuse or be compensated for.

100. This conduct violates Wyo. Stat. Ann. Sections 40-12-101 et seq.

101. Plaintiffs have been injured accordingly, with relief to be calculated as allowed by this statute.

### (TENTH CLAIM FOR RELIEF)

### (Delaware Consumer Fraud Act: deceptive practices; omissions)

102. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-101 of this Complaint as if fully set forth herein.

103. Defendants have by their conduct engaged in deceptive or unfair practices, especially in concealing and otherwise failing to disclose that they sell or otherwise financially transfer to third parties Plaintiffs' PFI, in whole or in part, something any reasonable Plaintiffs would want to know about and either refuse or be compensated for.

104. This conduct violates Del. Code Ann. Tit. 6, sections 2511-2527 and 2580-2584.

105. Plaintiffs have been injured accordingly, with relief to be calculated as allowed by this statute.

### (ELEVENTH CLAIM FOR RELIEF)

### (New York Gen. Bus. Law: deceptive acts or practices)

106. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-105 of this Complaint as if fully set forth herein.

107. Defendants have by their conduct engaged in deceptive or unfair practices, especially in concealing and otherwise failing to disclose that they sell or otherwise financially transfer to third parties Plaintiffs' PFI, in whole or in part, something any reasonable Plaintiffs would want to know about and either refuse or be compensated for.

108. This conduct violates N.Y. Gen. Bus. Law sections 349 through 350-f-1.

109. Plaintiffs have been injured accordingly, with relief to be calculated as allowed by this statute.

### (TWELFTH CLAIM FOR RELIEF)

### (North Carolina Gen. Stat. sections 75-1.1 et seq.: deceptive or unfair practices)

110. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-109 of this Complaint as if fully set forth herein.

111. Defendants have by their conduct engaged in deceptive or unfair practices, especially in concealing and otherwise failing to disclose that they sell or otherwise financially transfer to third parties Plaintiffs' PFI, in whole or in part, something any reasonable Plaintiffs would want to know about and either refuse or be compensated for.

112. This conduct violates N.C. Gen. Stat. sections 75-1.1 et seq.

113. Plaintiffs have been injured accordingly, with relief to be calculated as allowed by this statute.

### DEMAND FOR RELIEF

114. WHEREFORE, Plaintiffs pray for judgment against all Defendants that:

   a. Defendants be preliminarily and permanently enjoined from committing the acts alleged herein as well as be declared in violation of each of these laws;

   b. Defendants be ordered to provide restitution to Plaintiffs;

c. Defendants be ordered to pay damages as permitted by each of these laws;

d. Defendants be ordered to pay statutory damages as permitted by each of these laws;

e. Defendants be ordered to pay Plaintiffs' attorneys' fees and costs to the extent available under the statutes sued hereunder and under private attorney general statutes such as Cal. Civ. Proc. Code section 1021.5;

f. Plaintiffs be awarded punitive damages; and

g. Plaintiffs be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully request a jury trial on all issues triable thereby.

Dated this 18th of March, 2019.

/s/ David M. Rosenberg-Wohl
David M. Rosenberg-Wohl
HERSHENSON ROSENBERG-WOHL
A PROFESSIONAL CORPORATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AMENDED COMPLAINT [CLASS ACTION] - 21